1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| *In re* WILLIAM F. NORDEEN et al., | ) | |
| Debtors. | ) ) | |
| | ) ) | |
| WILLIAM F. NORDEEN et al., | ) ) | 2:12-cv-01574-RCJ-VCF |
| Appellants, | ) ) | **ORDER** |
| vs. | ) ) | Adv. Proc. No. 11-01419-BAM |
| TAYLOR, BEAN & WHITAKER MORTGAGE CO. et al., | ) ) ) | Bankr. Case No. 09-21273-BAM |
| Appellees. | ) ) | |
| | ) | |

17       This is an appeal of the Bankruptcy Court's dismissal of all claims brought in an

18   adversary proceeding under Bankruptcy Rule 7001.  For the reasons given herein, the Court

19   affirms in part, reverses in part, and remands.

20   **I.       FACTS AND PROCEDURAL HISTORY**

21       Appellants William F. and Carol A. Nordeen are the Debtors in the underlying Chapter

22   13 bankruptcy case.  Appellants, proceeding *in pro se*, brought the present adversary proceeding

23   in the Bankruptcy Court.  Apart from the procedural history, the case is a fairly standard

24   residential foreclosure avoidance action.  Appellants brought the following claims against

25   Defendants Taylor, Bean & Whitaker Mortgage Co. ("TBW") and Ocwen Loan Servicing Co.

("Ocwen") based upon the foreclosure of real estate at 7821 Bright Heights St., Las Vegas, NV 89131 (the "Property"): (1) Declaratory Relief (Quiet Title); (2) Fraud; (3) Perjury; (4) Quiet Title; (5) Unjust Enrichment; (6) and Violations of the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), and the Fair Debt Collection Practices Act ("FDCPA"). In substance, the following claims are listed: (1) Quiet Title; (2) Fraud; (3) Perjury; (4) Unjust Enrichment; (5) RESPA; (6) TILA; and (7) FDCPA. The Bankruptcy Court dismissed all claims for failure to state a claim, without leave to amend. Appellants have appealed as to all claims.

## II.   LEGAL STANDARDS

The bankruptcy court's conclusions of law, including its interpretations of the bankruptcy code, are reviewed de novo, and its factual findings are reviewed for clear error. *See Blausey v. U.S. Trustee*, 552 F.3d 1124, 1132 (9th Cir. 2009). A reviewing court must accept the bankruptcy court's findings of fact unless it is left with the definite and firm conviction that a mistake has been committed. *See In re Straightline Invs., Inc.*, 525 F.3d 870, 876 (9th Cir. 2008). Appellants have not appealed any denial of a demand for an Article III judge at the trial stage. Therefore, the Court will review the Bankruptcy Court's findings of fact for clear error, not de novo, as it would with respect to the non-core claims (apparently all of them) had Appellants demanded an Article III judge in the Bankruptcy Court and been denied one.

## III.   ANALYSIS

### A.   Quiet Title

The Court begins by noting that it is difficult to tell if there was any statutory defect in foreclosure in this case, because the relevant foreclosure documents are not a part of either the excerpt of record or the record in the Bankruptcy Court's own docket. Moreover, Appellants do not allege in the Complaint any recognizable statutory defects under NRS section 107.080, such as the filing of a notice of default by an entity that is neither the beneficiary, the trustee, or the

1  agent of either, or foreclosure after a MERS-type split in the interests in the note and deed of

2  trust before the split has been cured.  The Court agrees with the Bankruptcy Court that the

3  argument that securitization of a person's debt neither extinguishes the debt nor invalidates any

4  security interest in that debt (unless the security instrument specifically so provides, which

5  Appellants do not allege). *See, e.g.*, *Pritchard v. Countrywide Home Loans, Inc.*, No. 3:11-cv-

6  00352, 2011 WL 4356723, at *1 (D. Nev. Sept. 16, 2011) ("Securitization is merely a complex

7  way of transferring the beneficial interest in the debt. . . . So long as the fractional interest holders

8  of the debt are not squabbling amongst themselves over whether to initiate foreclosure versus sue

9  on the note or take no action at all, the trustee presumably represents their collective will.").

10  Still, the Court cannot affirm dismissal of the quiet title claim.[1]  The allegations in the

11  Complaint go beyond the typical "show me the note" arguments.  Here, Appellants do not simply

12  demand to be shown proof of their debt to a particular party, they specifically allege that the

13  lender, TBW, forgave the remaining principal balance of $138,701.63 on July 15, 2009 before

14  the loan was purportedly transferred to Ocwen, which if true would have extinguished both the

15  note and the security interest such that no party could ever again attempt to collect on the note or

16  foreclose the deed of trust. (*See* Compl. ¶ 14, Dec. 2, 2011, Pls.' ER 006).  Appellants allege that

17  Ocwen continues to attempt to collect the allegedly extinguished debt and/or foreclose on the

18  Property.  Appellants also allege that Ocwen itself appears to have admitted a zero balance on

19  Appellants' loan when it sent them an Excel spreadsheet so indicating in response to a RESPA

20  request. (*See id.* ¶¶ 39–41).  Appellants have made out a quiet title claim that must be resolved on

21  the facts, whether at summary judgment or at trial.

22  **B.    Fraud**

23  The Court affirms dismissal of the fraud claim.  Appellants do not plausibly allege

24  _____

25  [1]The declaratory relief claim is redundant with the quiet title claim, as a quiet title action is simply a request for a court to declare the rights of the parties as to the title to a piece of real estate. *See Kress v. Corey*, 189 P.2d 352, 364 (Nev. 1948).

1    reliance upon any misrepresentations, because they do not allege that any of them affected the

2    terms of the contract, i.e., the note and deed of trust.  Appellants make various arguments that the

3    lender was not the true beneficiary because it did not use its own monies to fund the loan, that an

4    assignment was invalid due to having been "robosigned," that MERS had no authority to assign

5    the note or deed of trust, etc.  The Court has seen these arguments many times before and has

6    rejected them.  But even if the Court could accept such arguments in the context of a quiet title

7    action, these allegations have nothing to do with fraud.  Appellants do not argue that the terms of

8    the note or deed of trust were different than represented to them by the lender and that they

9    would not have entered into the transaction but for the misrepresentations. *See Barmettler v.*

10   *Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998).

11        Appellants are correct that fraud can vitiate "anything it touches," but the fraud in this

12   case does not "touch" Appellants' obligations under the note and deed of trust.  As noted, *supra*,

13   there is no allegation that Appellants were defrauded into taking out the loan in this case based

14   upon misrepresentations concerning the material terms of the loan or the condition of the

15   Property.  The fraud Appellants allege in the Complaint has to do with the lender's alleged

16   concealment of overdrafts, selling nonexistent loans, double-selling pools of loans to banks, and

17   accounting for already-sold loans as collateral.  This alleged fraud does not affect the terms of

18   Appellants' note and deed of trust.  It was these other banks, the lender's stockholders, and

19   perhaps the government, who Appellants allege was defrauded.  Appellants do not allege that

20   they relied on any of these alleged misstatements, or even that these misstatements were made to

21   them.  They simply discovered this unrelated fraud later.  Appellants do not explain how this

22   alleged misconduct affects the validity of their own obligations other than to essentially argue

23   that because the lender engaged in fraud (as to some person and at some time), that any

24   transaction the lender ever engaged in with anyone is voided.  Appellants have not made out a

25   fraud claim.  A person's debt to a merchant is not extinguished simply because the merchant

1   defrauds the IRS or its own vendors, or engages in other fraudulent conduct incidentally related

2   to the consumer's purchase, unless it is the consumer *himself* who detrimentally relies upon the

3   merchant's materially false statements to him.

4   ### C.   Perjury

5          As the Bankruptcy Court correctly noted, there is no private right of action to enforce the

6   criminal perjury statute.  The Court affirms dismissal of this claim.  Appellants presumably

7   remain free to file a Rule 60(b)(3) motion in the bankruptcy case if they believe they have

8   grounds to be relieved from a confirmation order or other order or judgment.  That is the proper

9   procedure by which to rectify orders or judgments under which a litigant has been prejudiced by

10  another's perjury.

11  ### D.   Unjust Enrichment

12         The Bankruptcy Court correctly ruled that no action for unjust enrichment lies where a

13  contract governs the relationship between the parties, as here. *See LeasePartners Corp. v. Robert*

14  *L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997).

15  ### E.   RESPA AND TILA

16         Appellants mention RESPA only once, in the title of the nominal sixth cause of action,

17  which is also the only place where Appellants mention TILA.  They make no allegations relevant

18  to RESPA or TILA within the sixth causes of action, so the Court, like the Bankruptcy Court,

19  must scour the general allegations for any that may be relevant to these claims.

20         The Bankruptcy Court ruled that Appellants did not sufficiently allege having made any

21  qualified written request under RESPA, because they requested information unrelated to any

22  alleged error in or information concerning their accounts. *See* 12 U.S.C. § 2605(e)(1)(A).  This

23  conclusion is supported by the Complaint, and Appellants adduce no documents in the excerpt of

24  record that tends to challenge this conclusion.

25  ///

**F.   FDCPA**

The Bankruptcy Court correctly ruled that a person enforcing a lien against real property is not a "debt collector" under the FDPCA unless he obtains his security interest after the default he seeks to enforce. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).  The Bankruptcy Court found that there was "no indication in the record that the debt was in default at the time servicing rights were assigned to Ocwen." (Order 19 n.15, Aug. 10, 2012, Pls.' ER 122). The excerpt of record adduced by Plaintiffs does not indicate anything to the contrary such that the Court can determine the Bankruptcy Court abused its discretion in so finding.

**CONCLUSION**

IT IS HEREBY ORDERED that the decision of the bankruptcy court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED.  The Court REVERSES the dismissal of the quiet title claim and REMANDS for further proceedings but otherwise AFFIRMS.

IT IS FURTHER ORDERED that the Motion to Extend Time (ECF No. 12) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Strike Answering Brief (ECF No. 14) is DENIED.[2]

IT IS SO ORDERED.

Dated this 11th day of March, 2013.

_____
ROBERT C. JONES
United States District Judge

---

[2]Bankruptcy Rule 8010(c) limits the bodies of "principal briefs" to fifty pages and the bodies of "reply briefs" to twenty-five pages.  Appellee Ocwen's Answering Brief is forty-two pages long, and the body of the brief is thirty-six pages long.  Appellants appear to object that the body of the Answering Brief exceeds twenty-five pages, but an answering brief is a "principal" brief.  Both parties are granted the same number of pages (fifty) to present their initial arguments in the opening and answering briefs, respectively.  An appellant's reply brief is limited to twenty-five pages.